UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Magistrate No.: 19-MJ-205(DAR) |
| | : | |
| JESSIE MATHIS | : | |
| | : | Detention Hearing: August 7, 2019 |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF
PRETRIAL DETENTION OF DEFENDANT JESSIE MATHIS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in support of its request that defendant Jesse Mathis be detained pending the trial of this matter pursuant to 18 U.S.C. § 3142(f)(1)(E), because the offense involved a minor victim, and because there is no condition or combination of conditions that will reasonably assure the safety of any person and the community. The defendant has been charged by Criminal Complaint in the District of Columbia with one count Transfer of Obscene Material to a Minor, in violation of Title 18 United States Code Section 1470. An analysis of the factors set forth in 18 U.S.C. § 3142 below leads to the conclusion that detention is appropriate.

**FACTUAL BACKGROUND**

On November 30, 2018, Witness 1 contacted a detective with the Metropolitan Police Department ("MPD") to file a report concerning her son, K.P., a 12-year-old child (at the time of the offenses described herein).[1] Witness 1 reported that she regularly checks K.P.'s cellular phone

---

[1] Witness 1 had the detective's contact information in connection with a prior, unrelated investigation.

1

and computer for pornography. On one occasion, Witness 1 noticed K.P had left his cellular phone unlocked, so Witness 1 decided to do one of her random checks on the phone. Upon scrolling through the phone, Witness 1 noticed that K.P. had exchanged several Instagram messages with Jesse Mathis (herein "the defendant"), a 50-year-old former neighbor who Witness 1 and her family have known for several years.[2] Witness 1 observed that several of the messages between the defendant and K.P. included sexually explicit content. For example, Witness 1 observed that on November 17, 2018, the defendant sent K.P. two pornographic videos—one depicting a man penetrating a woman from behind the woman, and another depicting a woman performing oral sex on a man in a car.

Witness 1 gave law enforcement consent to search K.P.'s phone. Law enforcement then performed a preliminary forensic extraction of the phone's contents, and preserved them. A search warrant was also obtained out of the Superior Court for the District of Columbia for the defendant's and K.P.'s Instagram accounts. During the relevant time period, the defendant used the account "je.sse3703" and K.P. used the account "payne665."

On January 27, 2019, a detective with MPD's Youth and Family Services Division ("YFSD") conducted a video-recorded interview with K.P. During the interview, K.P. reported that the defendant, who he knows as "Jesse," used to live near K.P. and his family in Washington D.C.[3] The detective asked K.P. about his communication with the defendant. K.P. confirmed that he engaged in communication with the defendant on Instagram, and stated that he did not know how the defendant found him on Instagram. K.P. said that at first, the defendant thought that K.P. was K.P.'s father, who shares his same name, but that "after a minute," the defendant realized he

---

[2] Witness 1 later identified the defendant in a confirmation photo.

[3] On January 27, 2019, K.P. identified the defendant in a confirmation photo.

was talking to a child. K.P. said that the defendant sent him pornographic videos and other inappropriate material, and then told him to delete the videos. K.P. said the defendant later began video calling K.P. over the Instagram application. K.P. said he thought the defendant only video called him approximately two times. K.P. said the defendant referred to him as "nephew," even though K.P. and the defendant are not related.[4] The detective asked K.P. about a message the defendant sent him wherein he wrote to K.P., "I love you," with a heart shaped emoji. K.P. reported that "it felt stupid" when the defendant sent him that message, and he did not know why the defendant would write that, particularly since K.P. has a girlfriend. The detective also asked K.P. about a message the defendant sent him wherein he wrote that K.P. should "get [his] horny ass in the shower." K.P. said he was about to take a shower that time, but he denied knowing what the word "horny" means.

During the interview, K.P. identified two pornographic videos that were forensically extracted from his phone as having been sent to him by the defendant. These were the same two videos that Witness 1 had observed in K.P.'s phone, which are described above. K.P. also identified an image of a woman's naked buttocks that the defendant separately sent to him.

Throughout the interview, K.P. denied that the defendant ever sent him naked photographs of himself or asked K.P. to send naked photographs. K.P. also denied sending or receiving videos depicting male masturbation. K.P. said that he and the defendant have met in the past, *i.e.* when they were neighbors, but that the defendant did not ask to meet with K.P. in the time that K.P. was communicating with the defendant on Instagram. K.P. said that the last time he saw the defendant in person was around July 4, 2018.

---

[4] The defendant actually referred to K.P. as "newphew" [sic] repeatedly throughout their messages.

On March 8, 2019, detectives from YFSD conducted a non-custodial interview with the defendant. At the beginning of the interview, the defendant said he had accidentally sent some pornographic videos to K.P., believing that K.P. was K.P.'s father. The defendant apologized and said he had made a "terrible mistake." He later identified two pornographic videos he sent to K.P, and confirmed that one of the videos (which depicted a man having sex with a woman from behind the woman) was a "homemade" video, made by his friend "Ely."

When confronted with some of his Instagram messages to K.P., the defendant later admitted that at the time he sent pornography to K.P., and at the time K.P. sent pornography to him,[5] the defendant knew that he was sending the videos to K.P. (not K.P.'s father) and that K.P. was a child. He acknowledged to the detectives that his behavior was wrong, and that he should have cut things off with K.P. as soon as K.P. made clear to the defendant that K.P. was a child, and not K.P.'s father.

The defendant denied that K.P. ever sent pictures of his penis to the defendant, and that he ever sent pictures of his penis to K.P. When detectives asked the defendant whether K.P. ever sent photographs or videos to the defendant of K.P. masturbating, the defendant said that, while K.P. never sent him photographs or videos, K.P. did masturbate with the defendant on a video call, which the defendant said was K.P. "just trying to be funny." When the detectives asked the defendant for details about that incident, the defendant said that K.P. had exposed himself to the defendant on an Instagram video call, and that K.P. was touching his "pecker" or "private" at the

---

[5] The defendant said that K.P. sent him videos that K.P. got from PornHub, a website that hosts pornography videos.

time.[6] According to the defendant, he asked K.P., "Why are you showing me that," and told K.P. to put on his clothes.

The defendant later admitted that K.P. had exposed himself like this to the defendant "a couple of times."[7] The defendant said that at the time of these calls, K.P. was at K.P.'s home in Maryland and he (the defendant) was at his home in Washington, D.C.

A detective asked the defendant if he remembered exposing himself to K.P. in a "joking manner." The defendant replied, "Yes." When asked for specifics, the defendant said that he exposed himself to K.P. in an Instagram video call in a, "I'll show you, you show me" type of interaction. The defendant said that he had just come out of the shower, and that he laid down and exposed his penis to K.P. The defendant later characterized these interactions with K.P. as "sex play," and admitted that he (the defendant) would stroke his (the defendant's) penis while K.P. would stroke K.P.'s penis. The defendant referred to these mutual masturbation sessions as a "guilty pleasure," and admitted that he was "aroused" by the interaction, but not "fully aroused."

The defendant denied that he ever engaged in any hands-on sexual acts or sexual contact with K.P., and denied that he ever suggested that he and K.P. meet up or "hook up."

The defendant later wrote in a statement: "I Mr. Jesse Mathis engaged [in] wrong behavior with [K.P.,] . . . masturbating with [K.P.] and also showing penis picks of me and him[,] . . . and phone sex[,] . . . [and] sending XXX videos to him."

On March 14, 2019, detectives from MPD conducted an audio-recorded follow-up

---

[6] The defendant later acknowledged he was talking about K.P.'s penis, and that K.P. was "playing with himself." Later in the interview, the defendant said that K.P. had also exposed his "ass" to him.

[7] He later clarified it happened at least twice, and that it could have happened as many as five times.

interview with K.P. Detectives told K.P. that they had spoken with the defendant, were in possession of the defendant's cellular phone, and wanted to ask him some follow-up questions based on what they learned from the defendant. A detective asked K.P. if there was ever a time that he could see the defendant's body parts or the defendant could see his body parts during one of their video calls.[8] K.P. responded that the defendant could not see his body parts, but on their last video call, K.P. turned around and "[the defendant] just pulled his stuff out and he showed me." The detective asked K.P. what he meant by the defendant's "stuff," and K.P. explained that he meant the defendant's "private part," which he uses to go to the bathroom. K.P. denied that he was ever naked when he had video calls with the defendant, and denied that the defendant ever saw K.P.'s penis. But K.P. did say that on the occasion where the defendant showed K.P. his penis, the defendant also asked K.P., "What does yours look like?" K.P. reported that he told the defendant "I don't know." The defendant then told K.P. that since he had showed K.P. his penis, K.P. should show the defendant K.P.'s penis.

During this interview, K.P. also added that in his first video call with the defendant, the defendant was watching pornography on his television, and that he showed K.P. what he was watching.

Your affiant conducted a follow-up conversation with K.P. on July 17, 2019, which was also audio-recorded. During that conversation, K.P. reiterated that he only ever saw the defendant's penis on one occasion, during a video call, and that the defendant never saw his penis. K.P. added in that conversation that on one of the video calls he had with the defendant, the defendant asked

---

[8] K.P. said that the defendant always initiated the video calls, and that K.P. never called the defendant. The search warrant response from Facebook, Inc., shows frequent video calls between K.P. and the defendant, and appears to show instances where K.P. called the defendant.

K.P. if he liked boys or girls, to which K.P. responded girls.

In response to the search warrant, Instagram produced records for the defendant's and K.P.'s Instagram accounts. Those records show conversation and video calls between the defendant and K.P. from approximately November 17, 2018, to approximately November 28, 2018. On November 17, 2018, the defendant sent K.P. a photo of a woman's buttocks and what was apparently a pornographic video and then wrote, "That. Was. Bye. Accident. Earlier. I. Meant. To. Send. That. To. You're. Poops. That. Was. For. Him. And. You're. Uncle. Cleff. Please. Deelete. Ok. That. Was. Bye."[9] After sending those messages, however, the defendant continued to send K.P. sexually explicit videos and images, including the video referenced above of a woman performing oral sex on a man in a car, and another photograph of a woman's buttocks. The defendant encouraged K.P. to send him explicit images that K.P. said he downloaded off of PornHub. The defendant promised K.P. that he would not tell anyone what K.P. had sent him. After some discussion of K.P. getting ready to take a shower, the defendant wrote, "So. Go. Ahead. Get. You're. Horny. ASS. In. The. Shower. And. Cool. Off Ok. LOL. LOL. LOL. LMO. LMO. LMO. LMO." He then wrote, "A. INFACT. Can. You. Delete. All. The. Stuff. I. Sent. You. Ok. PLEASE. Thanks. Because. I. Can. Get. In. Trouble. Newphew. Because. It's. BADD. STUFF. DEELETE. ASAP. Real. Talk. PROMISE Me. You. Will. Right. Now. !!"

Later that day, K.P. wrote that he was out of the shower. The defendant responded, "Ok. Cool. Me. To. But. If. You. Me stuff. That's. Cool. But. I. Can't. You. Stuff. Like. That. Because. You. Under. Age. Ok. Thanks. And I. Can. Get. In. A. Whole. Lot. Of. Fucking trouble. Ok. So. Yeah. That's. FAM. Ok." He then added, "But. You. Can. Send. Me. Stuff. If. You. Want. Ok."

A few hours later, K.P. wrote to the defendant that he was playing on his laptop, and the

---

[9] All typographical errors in the quoted language are original.

defendant responded, "You. SHOURE. OR. You. PLAYING. With. You're. SELF. LOL. LOL. LOL. LOL. LOL. LMO. Ok. Real. Talk." K.P. asked the defendant what he meant by that, and the defendant responded, "BEATING. YOURE. MEAT. LOL. LOL. LOL. LOL. LMO. WACking. Off. LOL. LOL. LOL."

Between November 17, 2018, and November 25, 2018, the defendant and K.P. appear to have participated in dozens of video calls on the Instagram platform. They also exchanged several messages. On November 25, 2018, the defendant and K.P. were engaged in a conversation, and the defendant ended the conversation with "I. Love. You. Boy. You. Feel. Me. ♥♥♥♥. You. My. Newphew. Ok." He wrote again a few minutes later, "LOL. I. Love. You. To. Son. !! LOL," and again a few minutes after that, "Love. You. ♥♥ Newphew. Ok. Later."

The defendant made his initial appearance on August 2, 2019, at which time the United States requested that the defendant be held pending trial pursuant to 18 U.S.C. § 3142(f)(1)(E). On August 7, 2019, the defendant agreed to waive his preliminary hearing and defer a probable cause determination, but argued that he nonetheless be released. After conducting a detention hearing, the Court determined that there are no conditions or combination of conditions that can reasonably assure safety to the community, and therefore, that the defendant be detained pending trial in this matter. The government now submits this post-hearing memorandum regarding the basis for the defendant's continuing detention.

## APPLICABLE LEGAL STANDARD

The Bail Reform Act permits a judicial officer to hold an individual without bond pending trial if the officer finds clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Pursuant to 18 U.S.C. § 3142(f)(1)(E), the

8

judicial officer shall hold a hearing on the question of detention upon the motion of the government in a case that involves a crime against a minor victim. In deciding whether the defendant shall be held without bond, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

## ANALYSIS

For the reasons that follow, the government submits that that three of the four detention factors—the nature and circumstances of the offense charged, the weight of the evidence against the defendant, and the nature and seriousness of any danger to the community—all weigh in favor of detention. As such, the government submits that there are no conditions or combination of conditions that will reasonably assure the safety of any other person and the community, and that the defendant should remain held without bond.

### A. The Nature and Circumstances of the Offense Charged

The defendant in this case is charged with a serious offense against a minor victim. Over several days in November 2018, the defendant communicated with K.P., a 12-year-old child, through Instagram messages and video calls. Throughout the course of those calls, the defendant sent obscene material to K.P., knowing that K.P. was a child, and by his own admission, engaged in "sex play" with K.P., that is, the trading of "dick picks" and mutual masturbation sessions over video call. The defendant admitted in a non-custodial interview that this behavior with a known child constituted his "guilty pleasure." The defendant enticed K.P. to view and share pornographic materials, and enticed K.P. to display his genitalia to the defendant.

As an adult, the defendant should have known better. He admitted as much in his interview. But instead, he took advantage of K.P., using K.P for his own sexual gratification. Given the blatant and offensive nature of this conduct, there is no condition or combination of conditions that would ensure K.P.'s (or any other minor's) safety, or the safety of the community.

### B.     The Weight of the Evidence against the Defendant

As summarized above, the evidence against the defendant is overwhelming, including irrefutable electronic evidence, to include pornographic videos the defendant shared with K.P., along with sexually-explicit messages. Moreover, the defendant freely admitted to engaging in criminal conduct against K.P., acknowledging that he was wrong and that he should have known better. Given all of this evidence, this factor also favors the defendant's detention.

### C.     The History and Characteristics of the Defendant

This is the only one of the detention factors that weighs in favor of the defendant's release. The defendant has only one prior arrest, for Assault with Intent to Commit Robbery in 2013 (for which the charges were later dismissed). He has no criminal convictions.

### D.     The Nature and Seriousness of the Danger to Any Person or the Community

Finally, the evidence in this case establishes that the defendant represents a danger to K.P., as well as to other children in the community. As the government proffered during the detention hearing, the records received from Instagram regarding the defendant's account show that on at last one other occasion in November 2018, the defendant contacted a minor on Instagram, sent him several non-explicit photos of himself and his family members, asked for the child's name (he appeared to be a stranger to the child), and tried to strike up a conversation. The conversation did not progress much beyond that, but these communications cause the government additional

concern that the defendant's sexual interest in children is not limited to K.P., and demonstrate the nature and seriousness of the danger posed to other children in the community.

## CONCLUSION

For all of the reasons set forth above, and the other reasons articulated at the detention hearing, consideration of the evidence in this case and the applicable statutory factors compels the conclusion that the defendant should be detained pending trial.

WHEREFORE, the government respectfully requests that the court grant its motion for detention of the defendant.

>Respectfully submitted,
>
>JESSIE K. LIU
>UNITED STATES ATTORNEY
>
>___/s/_____
>
>Andrea Lynn Hertzfeld
>Assistant United States Attorney, D.C. Bar 494059
>Jennifer B. Loeb
>Assistant United States Attorney, D.C. Bar 996094
>U.S. Attorney's Office
>555 4th Street, N.W., Room 4823
>Washington, D.C. 20530
>202-252-7808
>Andrea.Hertzfeld@usdoj.gov